The next case for argument is 15-1370 MAG Aerospace Industries v. B.E. Aerospace. The next case for argument is 15-1370 MAG Aerospace, Inc. May it please the Court. This is not a case about claim construction, as it's abundantly clear just from what we have heard right now. It's all about alleged factual disputes. Yeah, but nobody ever defined the term tool. Okay. Let's start with 054. Sure. Nobody defined tool. I mean, if I could use a hair clip or a bobby pin to finagle something, would that come within the definition of tool under the claim construction? It certainly would. And that issue was resolved at claim construction as a matter of claim construction law. So very specifically, at the claim construction hearing, the other side proposed the construction and showed at the hearing examples of tools or implements that would be outside of their definition. And one was a twig, one was a paper clip, and another one was actually a coin. How about a fingernail? That's different. Fingernail is part of the human body. But the coin issue was expressly rejected by the district judge. What if you use a fingernail to turn a screw? That's not a question here, but that would not… The question I'm asking you is, is the fingernail a tool at that instant? If it's a natural fingernail, I would submit that potentially that is not a tool. But there is zero evidence of that actually in the case, zero credible evidence of any kind that people are using their fingernails. Specifically, let me just turn to the court's claim construction. You said it's a natural. We have fake fingernails these days, so I think you're careful to not say it necessarily has to be a natural. Wouldn't that be a jury question? I don't think it's a jury question. Let me just turn very quickly to the court's claim construction ruling at page 8A38, where the district court's first paragraph of its claim construction ruling said, the parties dispute whether the term toollessly prohibits the use of any tools or only conventional mechanics tools, so that the repair made with a simple device not commonly thought of as a tool, such as a coin, could nonetheless infringe. And the court rejected the plaintiff's construction, and therefore, as a matter of law, it's not contested. But didn't the district court at some point say, as your friend pointed out, that that's a question for later on? He did not say that. He said that I am here to resolve disputes is exactly what the judge said, and that's the dispute he resolved at claim construction, which is not disputed here. Now, even if it were a question of fact, which I don't think it is, if the claim construction record is read as it is. Even if it were a question of fact, there is no dispute that a screwdriver is a tool. Admit it. Everybody agrees. Here, the coin, if it is actually used, it's used to drive screws. It is actually a screwdriver of a different shape. With all due respect, the district judge was right. We cannot impanel a federal jury to debate whether the shape of the particular screwdriver is in or is out. And as a matter of claim construction law, that was resolved in any way, in any event. On the point of the fingernail, there is absolutely no credible evidence of any kind that a fingernail or just bare hands can be used. Notice the screw in one of the figures has little grooves on it. And I wonder why can't you reach in there with your fingers and turn it? In this particular case? Yeah. So the screw head is actually recessed a little bit, and you can't get your hands in there. You couldn't turn it completely, but you could get it going. I don't know, Your Honor. The fact of the matter is nobody tried it. Their expert had access to the product, the whole discovery period. Assuming you could do that, assuming you could reach in and just turn it like a quarter turn, you keep on going and you're using, wouldn't you say that that's turning the screw without a tool? If you actually are doing it with your hands, potentially. But again, the district judge was right. There is no evidence of that. And they just couldn't do it on the aircraft. The mechanic who has a belt on and the screwdriver readily available and the instructions from the company is told to use a screwdriver. And again, remember, this is a toilet. Never thought I would say that in federal court, but it is. And it's not clean. They're not supposed to have bare hands and no gloves. You just can't do it. You want to have some distance, and all the evidence shows that they use a screwdriver. They point to a document that says that it can be done without tools. The fact of the matter is that the record is clear. That particular sentence is a typo. The very same documents indicate that, specifically say that, quote. How is a typo saying used without tools? What is, you think the typo was without, should have been with? Without special tools. And there are hundreds of documents that correct that typo. And later in the same document, it says, quote. A person equipped with a screwdriver and no special knowledge is all that are required to change a bowl, close quote. Now, given the time, unless there are other questions on this point, let me move on to the other patents. With respect to the 055 patent, one brief point. There is actually a total lack of evidence that the flush valve and the control unit are replaced together as a set in the field. What about the video then? So the video is not in the field. In the video, it's a demonstration on the bench. It's actually in a conference room on a table. That is where a demonstration, a sales demonstration basically is made to show how one can completely disassemble a toilet and reassemble it on the bench in the shop. There is no indication in that video that it can be done or should be done in particular in the field. The court's claim construction, again, is dispositive here. The court's claim, the other side proposed that it's something that could be done or can be done. The court's claim construction was that it must be targeted to be done in the field, in the place where the product is installed. In this case, an aircraft, a toilet. And there is no indication that somebody can actually reach behind and completely disassemble the product in the actual aircraft in the laboratory. So this is a case where, again, the claim construction is dispositive and there is no evidence to the contrary that it's targeted to be done in the field. Moving on to the 942 patent. Again, this is a case where the court's claim construction and the dispute below fully resolves the dispute. The other side proposed that an outturned flange can include an edge, a rim, RIM, or a rib, RIB. The district court rejected that as a matter of claim construction law and said that the claim term is not broad enough to include a rib, RIB, only an edge or a rim. That ends the inquiry because the case here, the accused product has ribs. Here we heard this morning that they're disputing that they're not ribs, that they're actually columns. With all due respect, that is something we're hearing for the first time now. The fact is that that is just semantics. They clearly are ribs. The district court looked at the product during the claim construction hearing and, again, at summary judgment, saw exactly what is at issue. It was precisely at issue that those ribs or columns were alleged to be the infringing feature. That was discussed at the claim construction hearing as well. That is what they believed infringed. The district court said, look, that is a different type of a structure not encompassed within the scope of the claims as a matter of claim construction law. The MAG is not appealing that construction in this court. That ends the inquiry. To suggest that the end of the rib, if the rib is out, to suggest that the end of the rib that has nothing else on it, just the end of it, is actually within the scope of the claims. Again, it's legal sophistry. Simply because they lost on claim construction, it cannot simply be that now we have the same exact dispute on as a question of fact. Why don't you move on, I'd suggest, to your cross-appeal. Okay, very good. Assigner, I stop. Yes. Tell me, I mean, the district court seems to have applied with great detail and care the factors from Shamrock. Yes. And weighed each of them or whatever. And the standard of review, I'm sure you might agree, is an abuse of discretion. Where is the abuse of discretion? The district court got the law wrong. So if the district court got the law wrong, that is something that should be reversed. The district, two points on this issue. Number one, no federal circuit court has found a sign or estoppel in a case such as this one. In a case where the- You say very explicitly the district court got the law wrong. I mean, you want to point me in the opinion? Are you suggesting that there was a misstatement of what the law is in the opinion? So, well, yes, I'm suggesting that there is- Can you tell us what it is? Okay, so I was about to do that. There are two points. Let me actually begin with the second, what was going to be my second point. The court held categorically that, as an inflexible rule, that using the inventor's knowledge to avoid infringement under guidance of counsel is not a relevant factor. This is an equitable doctrine. All equitable factors should be considered. If, as the law is, the analysis is to be done in light of the infringement, the analysis should also include the opposite of that, which is evidence of a lack of infringement or intent to infringe. Here, there are opinions of counsel, and the company worked with lawyers to avoid infringement. So, he got wrong- What the district court got wrong is the inflexible rule that that's absolutely irrelevant. He did not consider it. Second point. The district court should not have extended the assigner-estoppel theory to a case such as this one, where the inventor is not a founder of the company, of B,  was a consultant in the beginning, he was not brought over to start the accused activity. He came in after that. Is there any case that you can cite to us that says that an absolute requirement is that the inventor have been a founder or have a substantial stake in the ownership of the company? No, Your Honor. But there is no case that goes the other way and expands the doctrine to facts such as this. And I will say that as a matter of policy, a minimum, that is not what this court should do. With all, if okay with the court, I'd like to reserve the last two minutes for rebuttal on this assigner-estoppel issue. Well, it's down to almost one minute, but we'll reserve. Thank you. Thank you. We've got four minutes remaining, is that right? Yes. Thank you. And you want to cover both issues? I would like to, yes. Let me start, if I may, with the patents again. On the 054, first of all, these are not screws. These are shallow plastic quarter-turn fasteners. All you do is pop something in there, turn it a quarter turn, and it pops out. So the screw terminology is something they've introduced in their brief before this court. They're not screws like we traditionally think of them. And as counsel's arguments just confirmed, they're arguing here, this argument that, well, a coin is really the same thing as a screwdriver because you use it for the same purpose. That's never an argument they made at claim construction before the district court. They never asked the district court to hold that a tool is a coin or that tool-lessly means anything other than your hands. Now they want to take the district judge's construction and say that's really what he meant, and that's really what it should be as a matter of law. But it's simply a factual issue in view of their admissions that you can do it without tools. There are statements in their manuals that not only a screwdriver but a coin can be used, such as at A6078, and the district court judge's statement at A1212 where I raised this issue and said it was a factual question on infringement. And he said, I'm here to resolve disputes, so we'll have to resolve it as best we can and move it to a jury as quickly as you can get it. That, combined with the Markman order, is not a ruling as a matter of law. In fact, in the summary judgment order at page A16, when discussing the documents we pointed to that said, where they said the bowl can be removed without tools, the district judge dismissed those documents and said, well, those documents just use a definition of tool that excludes coins. That's in the middle of the page on A16. And he said there's an inherent ambiguity in whether a coin is a tool. This is in the summary judgment order. Well, that's our point exactly. These BE documents show that there's a dispute of fact because they're using a definition of tool that excludes coins, just as the district judge observed. So that should be a factual issue for the jury. On the 055, just very briefly, the video that my friend discussed, it is true that was not taken in the field, but it's from a BE proposal sent to customers, and it's a training video about how you're supposed to repair, take down, and put back together this toilet in the field on the aircraft. So even though the video itself wasn't in the field, its purpose was to tell customers, here's how you disassemble and reassemble our product. And in that video, this valve set was removed and replaced as a unit. As its document said, it could be easily exchanged. And then on the 942, I just want to point out that it's simply not correct that at the claim construction hearing, I admitted that it had a rib and that, therefore, the only way we could prove infringement is if the district judge adopted rib. In fact, they had a model of their toilet at the Markman hearing, and I walked up to it. This is at page 45 of the claim construction hearing. I apologize. I don't have the record site, but it's at page 45. And I said, frankly, that's an outturned edge as well. I don't agree that if there's no rib, they don't infringe. So it was very clear from the beginning that we thought these columns had edges. And so for that reason as well, we think the 942 should be reversed. Just very quickly in the time I have left on Assign or Estoppel, this case is not a case to make new law. The court's decision in Intel is dispositive, that if you rely on the knowledge and assistance of an inventor to design a product alleged to infringe, you're estopped. You're in privity. Here at A1522- But doesn't it make a difference that they were here trying, they were using his knowledge to try to design a ROM to avoid infringement, not to infringe? It does not, Your Honor. Because of Intel, again, in Intel, this court said that illicit purpose, or indeed any purpose, is irrelevant. The question is, are you using knowledge and assistance to design a product that is accused of infringement? And in fact, that policy makes sense because that encourages legitimate, good faith, successful design around efforts so that there's no infringement suit. So that's, I believe, why the court held as it did in Intel. The last point, if I may make, I see it in my last 10 seconds. We would request that if the court is inclined to reverse on any of the patent issues, that we would like to request and also affirm on a sign of estoppel, we would request that the court direct immediate entry of judgment on that issue, as it did in Apple v. Samsung. We have some pending IPR proceedings. We believe that that ruling should apply there as well. You're asking us to vacate and renew on the infringement issues. You're asking for a trial. On the infringement issues, yes, and we're also asking you to affirm. We would ask that your affirmance direct the district court to enter judgment in our favor on the invalidity counterclaim, along with reversing, vacating, and remanding on the infringement question. Thank you, Your Honor. The Intel case does not resolve the issue here. In the Intel case, two things about it. First of all, the illicit purpose that the court addresses there says that it's not necessary, but of course it doesn't mean that an affirmative good faith effort under the guidance of counsel to avoid infringement is categorically rejected as a matter of law as irrelevant for the issue of privity. So Intel does not apply. Additionally, in Intel, the inventor provided personal guarantees and indemnity to the company that was found to be in privity with. Again, there is no case of the Federal Circuit that found privity in a situation like this, and this is not the case to expand it. If that were the linchpin, if merely bringing over an employee as part of a very large, multinational, publicly traded company to work in various engineering capacities, and if the only requirement more or less is knowledge and assistance to work as part of a team on the accused product, if that's all that were needed, we would be hampering mobility of employment, we would particularly penalize individuals with specialized skill sets, and we would create a de facto non-compete provision. That is not what the assigner estoppel is for, and that's not what privity is meant to be. You really do need a situation where the inventor is, if not the founder, in such close financial proximity and interest as the company as to make the two envelop each other. Thank you. We thank both counsel and the cases submitted. Thank you.